UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOE HAND PROMOTIONS, INC.,

      Plaintiff,

v.

THE HOOKAH LOUNGE, INC., et al.,

      Defendants.

v.

DISH NETWORK SERVICE CORPORATION, et al.,

      Third-Party Defendants.

Case No. 1:12-CV-721

HON. ROBERT HOLMES BELL

_____/

# **O P I N I O N**

This matter is before the Court on Third-Party Defendants Dish Network Service Corporation and Dish Network Service, LLC's (collectively, "Dish") motion to dismiss and/or for summary judgment. (Dkt. No. 34.) For the reasons that follow, this motion will be granted.

**I.**

Dish installed satellite television service at the commercial establishment located at 1522 Wealthy Street in September of 2008. (Dkt. No. 35, Defs.' Resp. 2.) According to Defendants/Third-Party Plaintiffs (two business entities alleged to have owned the

commercial establishment and three individuals alleged to be owners and/or officers of the business entities),[1] they made it clear to Dish that the cable installation was for a night club-type environment and they wanted the commercial service package. (*Id.*) However, Dish provided Defendants with a residential package that only provided programming licensed for private home viewing. (*Id.*) On July 11, 2009, Defendants ordered *Ultimate Fighting Championship 100: "Making History."* (First Am. Compl. ¶ 14.) Defendants were billed approximately $50.00 for this program. (Defs.' Resp. 2.) On September 19, 2009, Defendants ordered *Ultimate Fighting Championship 103: Rich Franklin v. Vitor Belfort*. (First Am. Compl. ¶ 33.) Again, Defendants were charged approximately $50.00. (Defs.' Resp. 2.) According to Defendants, the commercial rate applicable to an establishment of their size would be around $900.00. (*Id.*)

Plaintiff Joe Hand Promotions, Inc. asserts that it had the exclusive distribution rights to the two programs. (First Am. Compl. ¶¶ 14, 33.) Hand alleges that Defendants willfully and unlawfully intercepted, received, published, divulged, displayed, and/or exhibited these programs at the time of their transmission. (*Id.* ¶¶ 17, 36.) Consequently, Hand has asserted claims against Defendants for conversion and violation of the Communications Act of 1934, 47 U.S.C. § 605, and the Cable & Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553.

---

[1]Third-Party Plaintiffs/Defendants consist of The Hookah Lounge, Inc., B&E Lounge, Inc., Niveen Shatara, Emad Shatara, and Brent Hermiz. Hereinafter, these parties will be referred to solely as "Defendants."

Defendants have brought a third-party complaint against Third-Party Defendants Dish and AT&T Michigan-East, Inc., asserting a right to indemnity and a claim for breach of contract. (Dkt. No. 27, Am. Third-Party Complaint.) AT&T was dismissed pursuant to stipulation. (Dkt. No. 31.)

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a party may assert "failure to state a claim upon which relief can be granted" as an affirmative defense. "[T]o survive a motion to dismiss [under 12(b)(6)], the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal quotation marks omitted). In reviewing such a motion, the Court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). As a general rule, however, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent*, 583 F.3d at 903.

According to the Supreme Court, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal quotations omitted). While detailed factual allegations are not required, the pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### III.

### A. Count 1 - Indemnity

Defendants allege that Dish knew that the television service provided was for a commercial establishment and agreed to provide "business class" service. (Am. Third-Party Compl. ¶¶ 22-24.) They further allege that they were led to believe that Dish conveyed the necessary licenses for the commercial establishment to exhibit the Ultimate Fighting programs to the public. (*Id.* at ¶ 25.) Thus, Defendants conclude that they "are entitled to be defended and indemnified by [Dish] based on [Dish's] negligence and misrepresentations."[2] (*Id.* at ¶ 26.)

An indemnity claim may be brought pursuant to federal statute or federal common law, or pursuant to state law. While Defendants' third-party complaint never states the legal basis for their claim to indemnity, Defendants state in their response brief that they seek indemnification pursuant to Michigan's recognition of a right to implied contractual

---

[2]Despite referencing such terms in this paragraph, Defendants do not raise a negligence or fraudulent misrepresentation cause of action. The required elements for such causes of action were not pleaded, nor did Defendants assert in their response brief that they intended to raise such causes of action.

indemnity.[3] (Defs.' Resp. 7.)

"In Michigan, a right to indemnity may arise from three sources: the common law, an implied contract, and an express contract." *Oberle v. Hawthorne Metal Prods. Co.*, 480 N.W.2d 330, 333 (Mich. Ct. App. 1991). "It has long been held in Michigan that the party seeking indemnity must plead and prove freedom from personal fault." *Langley v. Harris Corp.*, 321 N.W.2d 663, 665 (Mich. 1982). "[A] common-law indemnification action 'cannot lie where the plaintiff was even .01 percent actively at fault.'" *Botsford Continuing Care Corp. v. Intelistaf Healthcare, Inc.*, 807 N.W.2d 354, 361 (Mich. Ct. App. 2011) (quoting *St. Luke's Hosp. v. Giertz*, 581 N.W.2d 665, 669 (1998)). "A party may not seek indemnity under the common law or an implied contract where the primary complaint alleges active, rather than passive, liability." *Oberle*, 480 N.W.2d at 333. As the Michigan Court of Appeals recently explained:

> In general, "[w]hether a party is 'passively' (vicariously) liable or 'actively' liable for purposes of determining the availability of common-law indemnity is to be determined from the primary plaintiff's complaint." If the primary plaintiff's complaint contained any allegations of active negligence, rather than merely allegations of passive negligence, common-law indemnification is not available.

*Botsford*, 807 N.W.2d at 361 (internal citations omitted).

Dish argues that Defendants cannot make out a claim for implied contractual indemnity because the primary complaint alleges "active" fault. Dish is correct in this

---

[3] As the parties appear to recognize in their briefing, Defendants cannot make out a claim for indemnity under federal law, Michigan common law, or an express contract. (Dkt. No. 34, Dish's Br. in Support 7-8; Defs.' Resp. 6-7.)

regard; the complaint alleges that Defendants' actions were "willful, malicious, egregious, and intentionally designed to harm Plaintiff Joe Hand Promotions, Inc." (First Am. Compl. ¶¶ 30, 49.) Defendants are unable to make an argument that the complaint does not allege active fault and do not attempt to do so. Instead, they seem to argue that freedom from active fault is only a prerequisite for *common law* indemnity as opposed to *implied contractual* indemnity. However, no such distinction exists: "an action for indemnification can be maintained only on the basis of an express contract or, in the case of common-law or implied contractual indemnification, by a party who is free from negligence or fault." *Univ. Gym Equip., Inc. v. Tanny Int'l, Inc.*, 526 N.W.2d 5, 8 (Mich. Ct. App. 1994) (citing *Williams v. Litton Sys., Inc.*, 449 N.W.2d 669, 671 (Mich. 1989)), *rev'd on other grounds*, 531 N.W.2d 719 (Mich. Ct. App. 1995); *see also Oberle*, 480 N.W.2d at 333 ("A party may not seek indemnity under the common law or an implied contract where the primary complaint alleges active, rather than passive, liability."). Thus, because the primary complaint undisputedly alleges active fault, implied contractual indemnification is not a viable legal theory.

**B. Count 2 - Breach of Contract**

Defendants also allege that they contracted with Dish for the right to exhibit the programs in question. (Am. Third-Party Compl. ¶¶ 29-32.) They allege that Dish should have known that it did not have the right to sell the programs to the Defendants at the rates at which it did. (*Id.* at ¶ 33.) According to Defendants, Dish's actions constituted a breach of its agreements with Defendants. (*Id.* at ¶ 34.)

Dish makes two arguments for dismissal of this claim: (1) the plain language of the contract states that the services provided were for private home viewing only; (2) the claim is a thinly disguised contribution claim.

*1. Plain Language*

The service agreement is a "Residential Customer Agreement" (Dkt. No. 34, Ex. A, at PageID# 146, Ex. B, at PageID# 149), which plainly states:

> E. <u>Private Home Viewing Only</u>. DISH Network provides Services to you **solely for your private home viewing**, use and enjoyment. **You agree that no Services provided to you will be viewed in areas open to the public or in commercial establishments.** Services may not be rebroadcast, nor performed, nor may admission be charged for listening to or viewing any Services. If we later determine that you utilized your Equipment (or sold, leased or otherwise gave possession of such equipment to a third party who you knew or reasonably should have known intended to use it) to permit the viewing of Services in a commercial establishment or any other area open to the public, we may disconnect your Services and in addition to all other applicable fees, you agree to pay us the difference between the price actually paid for Services and the full commercial rate for such Services, regardless of whether we have or had the rights to distribute such Services in a commercial establishment.

(Dkt. No. 34, Ex. B, at PageID# 149 (emphasis added).) Defendants are unable to dispute the unambiguous language of the contract. Instead, in their one paragraph response, they attempt to argue that they contracted for commercial service but, because of Dish's misrepresentations, ended up with residential service. (Dkt. No. 35, at 7.) According to the affidavit of Emad Shatera, he informed Dish about the commercial nature of the establishment, Dish indicated it could provide the requested service, and he relied on those representations in signing the agreement. (Dkt. No. 35, Ex. 1.)

7

As illustrated by the "Private Home Viewing Only" excerpt above, the written contract, signed by Emad Shatera, undisputedly provides for residential service only. "According to the parol evidence rule, parol evidence is not admissible to vary the terms of a clear and unambiguous contract." *Perry v. Bankston*, No. 180018, 1997 WL 33349249, at *2 (Mich. Ct. App. May 13, 1997); *see also, e.g.*, *Miles v. Shreve*, 146 N.W. 374, 377 (Mich. 1914) ("In an action on a written contract, parol evidence is not admissible to contradict or vary its terms."). To the extent Defendants mean to argue that there were oral contracts for commercial service distinct from the signed written contract, that argument is unavailing. Even if the Court found that such oral contracts existed, they would be invalidated by the subsequent written contract:

> If parties to a prior agreement enter into a subsequent contract that completely covers the same subject, but the second agreement contains terms that are inconsistent with those of the prior agreement, and the two documents cannot stand together, the later document supersedes and rescinds the earlier agreement.

*Omnicom of Mich. v. Giannetti Inv. Co.*, 561 N.W.2d 138, 140 (Mich. Ct. App. 1997); *see also Givens v. Reese*, No. 254910, 2005 WL 3076920, at *1 (Mich. Ct. App. Nov. 17, 2005) ("[A] later contract supersedes a prior contract [] where the later contains terms different from and irreconcilable with the prior.")

Thus, the only valid contract is the unambiguous residential service agreement. The fact that Defendants may have believed they were signing a contract for commercial service is of no matter. "It is well established that failure to read an agreement is not a valid defense

to enforcement of a contract. A contracting party has a duty to examine a contract and know what the party has signed, and the other contracting party cannot be made to suffer for neglect of that duty." *Montgomery v. Fid. & Guar. Life Ins. Co.*, 713 N.W.2d 801, 804 (Mich. Ct. App. 2005) (citations omitted).

Accordingly, the breach of contract claim must be dismissed.

### 2. Disguised Contribution Claim

Alternatively, Dish argues that Count 2 should be dismissed as a thinly-disguised contribution claim, which is improper in this case. The Court finds it unnecessary to address this argument because it finds that the breach of contract claim must be dismissed due to the contract's plain language. To the extent that Dish, through this alternative argument, has raised the possibility that the cause of action in Count 2 is something other than breach of contract, Defendants disclaim this possibility in their response, stating that their "claim for breach of contract is proper and should be sustained." (Defs.' Resp. 8.)

## IV.

Dish has satisfied its burden and is entitled to dismissal from this action. Accepting all of Defendants' factual allegations as true, the plain language of both Plaintiff's complaint and the "Residential Customer Agreement" precludes Defendants' ability to make out claims for indemnity or breach of contract. While the ambiguity in the amended third-party complaint leaves open the possibility that Defendants intended to plead causes of action besides indemnity and breach of contract, Defendants' briefing, which only addresses those

9

two causes of action, makes clear that the intended claims are indeed for indemnity and breach of contract.  Additionally, Defendants have not indicated that they would like the opportunity to further amend their third-party complaint or that such amendment could save the complaint from dismissal.  Accordingly, the amended third-party complaint will be dismissed in its entirety.


Date:  <u>April 25, 2013</u>                             <u>/s/ Robert Holmes Bell</u>
                                                      ROBERT HOLMES BELL
                                                      UNITED STATES DISTRICT JUDGE